UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES of AMERICA | ) | |
| | ) | |
| v. | ) | 1:17-cr-00123-JAW-1 |
| | ) | |
| MYRON CROSBY, Jr. | ) | |

**ORDER ON MOTION TO DISMISS BASED ON IMPROPER VENUE, OR, IN THE ALTERNATIVE, TO CHANGE VENUE TO CONNECTICUT**

Contending that he has never been to Maine, when the indictment alleges he participated in a heroin distribution conspiracy in Maine, Myron Crosby, Jr. seeks dismissal of the indictment because in his opinion venue is improper in the District of Maine and because the evidence placing the conspiracy in Maine comes from a Government cooperator. In the alternative, Mr. Crosby moves for transfer of the case to the District of Connecticut claiming racial prejudice and inconvenience.

The Court denies the motion to dismiss because the Defendant's motion to dismiss relies on fact-finding that may only be done by a jury and because information provided by a Government cooperator may be used to establish venue. The Court denies the motion to transfer venue on the basis of racial prejudice because Mr. Crosby has not provided a sufficient record for the Court to conclude that race-based prejudice in the District of Maine would prevent him from receiving a fair trial by an impartial jury in this District and that any improper bias may be not addressed in

the ordinary course by jury voir dire. Lastly, the Court determines that convenience does not warrant transfer to the District of Connecticut.

I.  BACKGROUND and the PARTIES' POSITIONS

On September 14, 2017, a federal grand jury issued a one-count indictment against Myron Crosby, Jr., alleging participation in a conspiracy to distribute and possess with the intent to distribute heroin in violation of federal criminal law. *Indictment* (ECF No. 2). Count One alleges:

> Beginning on a date unknown, but not later than May 1, 2015, and continuing until a date unknown, but not earlier than January 25, 2016, in the District of Maine and elsewhere, defendant
>
> MYRON CROSBY, JR. a/k/a "Marion Crosby," a/k/a "Templer,"
>
> knowingly and intentionally conspired with others known and unknown to commit offenses against the United States, namely, the distribution and possession with the intent to distribute one kilogram or more of a mixture or substance containing heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

*Id.* at 1.

A.  **Motion to Dismiss for Improper Venue**

On May 17, 2018, Mr. Crosby moved to dismiss the indictment "or so much of it as requires that venue be placed outside the District of Maine." *Def.'s Mot. to Dismiss Based on Improper Venue, or, in the Alternative, to Change Venue to Connecticut* (ECF No. 49) (*Def.'s Mot.*). Mr. Crosby argues, because "there is no evidence that [he] was present in any way in Maine during any times relevant to the alleged charge, or at any other time," the Court should dismiss the indictment for

2

improper venue. *Id.* 1-2. He flatly states that "the activity at issue—the heroin transaction—occurred outside the District of Maine." *Id.* at 2.

Mr. Crosby concedes that "the presence of a co-conspirator in Maine to develop a drug distribution conspiracy with [Mr. Crosby], who was then out-of-state, is a sufficient act to support venue in Maine for a conspiracy prosecution." *Id.* at 4. However, he maintains that the conspiratorial objective ends once a conspirator cooperates with the Government and acts as a Government agent or informant. *Id.* at 4. He claims that a phone call placed by a cooperator to Mr. Crosby following the 2016 traffic stop "cannot be the basis of venue as the call was not placed during and in furtherance of the conspiracy." *Id.* at 5. Mr. Crosby "denies any conspiratorial objective relative to Maine." *Id.* at 5.

The Government responded to Mr. Crosby's motion on May 22, 2018. *Gov't's Opp'n to Def.'s Mot. to Dismiss Based on Improper Venue or, in the Alternative, to Change Venue to Connecticut* (ECF No. 56) (*Gov't's Opp'n*). The Government urges denial of the motion to dismiss, but it fails to address Mr. Crosby's contention about the source of the evidence supporting venue being a cooperator, as opposed to a co-conspirator. It agrees with Mr. Crosby that in a conspiracy case venue is proper in any district in which an act in furtherance of the charged conspiracy has taken place, even if a particular co-conspirator was not himself physically present in that district. *Id.* at 2. It cites *United States v. Ramnath*, 365 F. App'x 230, 234 (1st Cir. 2010), where the First Circuit concluded that, in a drug conspiracy case, venue was proper in the District of Maine since there was sufficient evidence in the record "to show that

3

Maine was where the chain of commerce ended." *Id*. (quoting *Ramnath*, 365 F. App'x at 234).

Here, the Government points out that Mr. Crosby acknowledges its allegation that he obtained the heroin in Connecticut, and supplied it to other conspirators, who then distributed it to others in Maine. *Gov't's Opp'n* at 3. The Government says that this enough for the Court to conclude that Maine has a meaningful connection to the crime charged against Mr. Crosby in the indictment. *Id*. It asserts that the fact that the defendant never came to Maine does not alter the conclusion that venue here is appropriate, as the appropriate inquiry focuses on the connection of the offense to the venue, not the connection or presence of the defendant to the venue. *Id*.

### B. Transfer under Rule 21

Mr. Crosby moves to change venue to the District of Connecticut on two bases: (1) that alleged comments by the Governor of Maine involving racial animus render Mr. Crosby, an African American, unable to obtain a fair trial in Maine; and (2) that Maine is an inconvenient venue because Mr. Crosby has never been to Maine and the Government alleges that he engaged in criminal conduct in Connecticut. *Def.'s Mot.* at 5-8.

#### 1. Prejudice under Rule 21(a)

Mr. Crosby moves pursuant to Rule 21(a) for transfer of venue due to alleged prejudice in Maine against African Americans. *Def.'s Mot.* at 5-6. He claims that the Governor of Maine "has insisted that out-of-state black men come to Maine to deal drugs and impregnate while women." *Def.'s Mot.* at 6 n.2. Mr. Crosby also quotes the

4

Governor as having said, "Everybody in Maine, we have constitutional carry, load up and get rid of the drug dealers." *Id*. Mr. Crosby alleges that these comments, others like them, and the news media's publication of them prejudice him in this case. *Id*. at 5-6. Specifically, he does not believe that a fair and impartial jury can be selected due to the Governor's remarks. He points to a "recent jury selection in this Court involving an out-of-state African American Defendant facing similar charges, [wherein] the parties were within one or two jurors from not being able to select a jury," in part because "[s]everal prospective jurors conceded that they were 'prejudiced' by the Governor's comments and did not feel they could be fair and neutral to the Defendant." *Id*. at 6.

Mr. Crosby cites *United States v. Misla-Airdarondo*, 478 F.3d 52, 57 (1st Cir. 2007) for the proposition that a presumption of prejudice may be warranted where publicity is both extensive and sensational in nature and that "inflammatory media coverage may generate a presumption of prejudice." *Def.'s Mot*. at 5. He also cites *Misla-Airdarondo* in support of his contention that prejudice may also be gauged by the difficulties a Court has seating an impartial jury in a related case and that a large percentage of jury venire disqualifications is evidence of prejudice in the community and may lead a court to "properly question the remaining jurors' avowals of impartiality." *Id*.

The Government urges denial of the motion to transfer on this basis, stating that "Rule 21(a)'s requirements tend to 'almost exclusively' apply 'in cases in which pervasive pretrial publicity has inflamed passions in the host community past the

5

breaking point.'" *Gov't's Opp'n* at 4 (citing *United States v. Walker*, 665 F.3d 212, 223 (1st Cir. 2011)). The Government points out that Mr. Crosby does not allege that there has been any pretrial publicity about this case, which it deems fatal to his argument. *Gov't's Opp'n* at 4. According to the Government, the Court's prejudice inquiry is properly focused on this particular case, and that the general allegations Mr. Crosby makes about prejudice based on statements by the Governor about male African American drug dealers are insufficient. *Id*. The Government characterizes Mr. Crosby as "rel[ying] on the assumption that prejudice will result because he is African American," and it argues that such an assumption cannot justify transfer of venue. *Id*. The Government states that "the mere fact that this case involves an African American defendant in a district which is predominantly white, does not trigger prophylactic measures such as a transfer of venue." *Id*. at 5. It acknowledges that substantial indications of the likelihood of racial bias could support a change of venue request. *Id*.

### 2. Convenience under Rule 21(b)

Mr. Crosby also moves for transfer of venue pursuant to Rule 21(b) for reasons of convenience. *Def.'s Mot*. at 6-8. In support he observes that the activity alleged by the Government to underlie the charge in the indictment occurred outside of Maine. *Id*. at 7. As with his argument for dismissal, he contends that "he had no further involvement or input regarding where and what happened" after his alleged provision of drugs in Connecticut. *Id*. He claims that the records involved "would not be Maine-based." *Id*. He suggests the District of Connecticut as a convenient venue "because

6

it where the alleged activity occurred and is close to the [hi]s Springfield, Mass., residence and would make it easier to call witnesses located in Mass. & Ct. to testify that [he] did not participate in a conspiracy to distribute drugs." *Id*. He anticipatorily rejects any argument that because the conspirators lived, operated, and made calls from Maine, Maine must be a convenient forum. *Id*. at 8. He reiterates that he "has never been to Maine nor transacted any business in Maine." *Id*.

The Government argues that transfer of venue pursuant to Rule 21(b) is not warranted. *Gov't's Opp'n* at 5-9. In support, the Government offers its view that application of most of the factors in *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964) support its position. *Id*. at 6-8. It asserts that a number of persons critical for trial are presently in Maine: Mr. Crosby, various Government witnesses, and counsel for both parties. *Id*. at 6, 8. The Government states that its witnesses that are not in Maine are able to travel here. *Id*. at 6. It avers that Mr. Crosby "has not identified any trial witnesses or offered an explanation as to why [any] witnesses could not travel to this district to testify." *Id*. at 6. The Government sees events that took place in Maine, Connecticut, and Massachusetts as likely at issue. *Id*. at 7. The Government represents that transfer to the District of Connecticut "would result in significant expense to the Government," whereas trial in the District of Maine would not lead it to incur any extraordinary expense. *Id*. at 8.

In the Government's view, some of the *Platt* factors are inapplicable and another it cannot assess. The Government sees no special considerations relevant to

transfer and foresees no potential disruption to any business that Mr. Crosby might operate. *Id*. at 7-8. It claims that "[a]ll documentary evidence in the case has been produced to [Mr. Crosby]," and thus that venue should not turn on the location of such documents and records. *Id*. at 7 (citing *United States v. Motz*, 652 F. Supp. 2d 284, 291 (E.D.N.Y. 2009)). The Government states that it does not have sufficient information to assess the relative docket conditions in the District of Maine and District of Connecticut. *Gov't's Opp'n* at 8.

## II. DISCUSSION

### A. Motion to Dismiss for Improper Venue

Under the United States Constitution, a criminal defendant has a constitutional right to be tried "in the State where the . . . Crimes shall have been committed." U.S. CONST. ART. III, § 2, cl. 3. Under 18 U.S.C. § 3237, "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." The Government must prove venue by a preponderance of the evidence. *United States v. Valenzuela*, 849 F.3d 477, 487 (1st Cir. 2017). "For purposes of a conspiracy, venue is proper 'in any district in which such offense was begun, continued, or completed.'" *United States v. Razo*, No. 1:11–cr–000184–JAW, 2012 WL 5874768, at *3 (D. Me. Sep. 27, 2012), *aff'd in part and rejected in part on other grounds* 2012 WL 5874667 (D. Me. Nov. 20, 2012) (quoting 18 U.S.C. § 3237(a)).

Here, the indictment alleges:

> Beginning on a date unknown, but not later than May 1, 2015, and continuing until a date unknown, but not earlier than January 25, 2016, <u>in the District of Maine</u> and elsewhere, defendant Myron Crosby, Jr. a/k/a "Marion Crosby", a/k/a "Templer" knowingly and intentionally conspired with others known and unknown to commit offenses against the United States, namely, the distribution and possession with the intent to distribute one kilogram or more of a mixture or substance containing heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

*Indictment* at 1 (ECF No. 2) (emphasis supplied). The indictment therefore alleges that Mr. Crosby was part of a conspiracy, the object of which was the distribution or the possession with the intent to distribute heroin, in the District of Maine. On its face, this seems sufficient to establish venue in Maine.

Mr. Crosby bases his motion to dismiss for improper venue on his understanding that law enforcement only connected him to Maine by information from cooperators. A flaw fatal to his motion to dismiss the indictment is that the indictment, as framed, sets forth sufficient facts to establish venue and Mr. Crosby's motion to dismiss assumes facts contained only in his memorandum, not in the indictment. Therefore it is premature to definitively resolve the issue of venue, based on a motion to dismiss because it assumes facts not properly before the Court. *United States v. Ayeki*, 289 F. Supp. 2d 183, 188 (D. Conn. 2003).

Mr. Crosby is entitled, if he wishes to do so, to challenge venue at trial by awaiting the Government's case and, if in his view the Government fails to prove facts sufficient to establish venue, to dispute venue at that time. *See id.*; *United States v. Maldonado-Rivera*, 922 F.2d 934, 968 (2d Cir. 1990). Thus, as the First Circuit observed in *United States v. Georgiadis*, 819 F.3d 4, 10-11 (1st Cir. 2016), a venue

9

determination may be made by a jury. 819 F.3d at 11; *see also United States v. Engle*, 676 F.3d 405, 412-13 (4th Cir. 2012) (quoting *United States v. Acosta-Gallardo*, 656 F.3d 1109, 1118 (10th Cir. 2011) ("Venue 'is ordinarily decided by the jury'"). Either the Government or Mr. Crosby may present venue-related questions to the jury for its resolution of disputed facts. *Id.*

But in ruling on a motion to dismiss the indictment, the Court may neither assume nor find facts, and it certainly may not do so based merely on blanket factual assertions in the memorandum of defense counsel. Of course, if the Government actually produces evidence at trial that individuals who lived or worked in Maine actively participated in the drug-trafficking conspiracy alleged in the indictment, it will be more difficult for Mr. Crosby to maintain that venue is not appropriate in the District of Maine. But this supposition, like Mr. Crosby's unsupported factual contentions, will have to await evidence.

Mr. Crosby has another arrow in his quiver. He contends that cooperators cannot simultaneously be his co-conspirators because their cooperation with the Government negates any conspiratorial objective they once had. Therefore, he claims that a call from a former conspirator turned cooperator to him cannot serve as the basis of venue in Maine because such a call was not placed in furtherance of the conspiracy.

In addition to the Court's concern about the propriety of an argument based solely on factual assertions in counsel's memorandum, the Court makes some observations about Mr. Crosby's theory. Although Mr. Crosby contends that the

10

cooperators were not conspirators at the time they provided information to the Government, he does not deny that he himself was a conspirator. Nor does he deny a conspiracy existed. It is unclear to the Court, and Mr. Crosby leaves the Court to wonder, why information provided by a cooperator, as opposed to a co-conspirator, cannot serve as evidence the Government uses to establish that venue is proper.

He cites cases from the Seventh Circuit that address circumstances where the court invalidated convictions for drug distribution conspiracies due to insufficiency of the evidence. *Def.'s Mot.* at 4-5 (citing *United States v. Thomas*, 284 F.3d 746 (7th Cir. 2002); *United States v. Contreras*, 249 F.3d 595, 599 (7th Cir. 2001)). In both cases, the Seventh Circuit applied a rule that those who cooperate with the Government do not harbor a genuine desire to commit a crime but are acting to expose one and such cooperators cannot be a part of a conspiracy. Mr. Crosby points to no binding authority espousing such a rule.[1]

In any event, these cases do not speak to venue, let alone Mr. Crosby's theory of cooperator-provided information being an illegitimate foundation to support a finding of proper venue. Even assuming Mr. Crosby's allegations to be true—that the

---

[1] The First Circuit has held that "a conspiracy may not be between one individual and a government agent." *United States v. Rivera-Ruperto*, 884 F.3d 25, 32 (1st Cir. 2018); *United States v. Portela*, 167 F.3d 687, 699-700, 700 n.8 (1st Cir. 1999) ("[G]overnment agents do not count as co-conspirators") (quoting *United States v. Giry*, 818 F.2d 120, 125 (1st Cir. 1987)). It has also held that the involvement of an undercover Drug Enforcement Administration agent in a conspiracy involving numerous participants who are not government agents does not defeat a conspiracy charge. *United States v. Cordero*, 668 F.2d 32, 43 (1st Cir. 1981) ("The participation of a government agent in a conspiracy does not negate the existence of that conspiracy nor make it any the less a violation of the law"). But Mr. Crosby does not allege that any conspirator in the alleged conspiracy was a government agent. Instead, he is claiming that evidence from a government cooperator must not be allowed to prove venue. This is a different proposition than the rule expressed in *Rivera-Ruperto*. Mr. Crosby cites no authority for what appears to be a novel theory and the Court could independently find none.

Government is relying exclusively on information from someone who was a cooperator, not a co-conspirator—the Court sees no reason to adopt Mr. Crosby's view that cooperator status renders that person an invalid source of information for the Government to prove that venue is proper in the District of Maine.

## B. Motion for Transfer Pursuant to Rule 21

### 1. Prejudice under Rule 21(a)

In his transfer argument, Mr. Crosby asserts that Paul LePage, the Governor of the state of Maine, made public statements that prevent Mr. Crosby from receiving a fair trial in the District of Maine. *Def.'s Mot.* at 3 n.1. Mr. Crosby relies on *United States v. Misla-Airdarondo*, 478 F.3d 52 (1st Cir. 2007) and *United States v. Drougas*, 748 F.2d 8 (1st Cir. 1984). Neither case advances his argument. In both *Misla-Airdarondo* and *Drougas*, the First Circuit addressed issues of prospective juror knowledge of the defendants and media coverage of the allegations against them. *Misla-Airdarondo*, 478 F.3d at 58-60; *Drougas*, 748 F.2d at 29-30. Here, Mr. Crosby does not allege that any prospective jurors know him or are aware of the allegations against him.

His contention is quite different: that media coverage of the Governor's allegedly inflammatory remarks stoked racial animus against African-Americans in the state of Maine to such a degree that Mr. Crosby cannot get a fair trial. According to Mr. Crosby, the Governor's comments were not directed against African-Americans in general, but African-Americans (1) who are male, (2) who are from places other than Maine, and (3) who engaged in drug distribution in Maine. *Def.'s Mot.* at 3 n.1.

Mr. Crosby is an African-American man from outside Maine accused of participating in a conspiracy whose object was the distribution of drugs in Maine.

"Venue change on grounds of prejudice will be deemed appropriate where there is an ever-prevalent risk that the level of prejudice permeating the trial setting is so dense that a defendant cannot possibly receive an impartial trial." *United States v. Quiles-Olivo*, 684 F.3d 177, 182 (1st Cir. 2012). Such prejudice may be established where the facts show "that jury prejudice should be presumed, and [ ] if prejudice should not be presumed, [that] the jury was actually prejudiced against the defendant." *Id.* (quoting *United States v. Rodríguez–Cardona*, 924 F.2d 1148, 1158 (1st Cir. 1991)). In this case, as a jury has not yet been selected, a presumption of prejudice is required to justify transfer pursuant to Rule 21(a). Such a presumption "is reserved for those extreme cases where publicity is 'both extensive and sensational in nature.'" *Misla-Aldarondo*, 478 F.3d at 58 (quoting *United States v. Angiulo*, 897 F.2d 1169, 1181 (1st Cir. 1990)).

While pretrial publicity about a defendant and charges he is facing is the most typical backdrop in the caselaw of Rule 21(a), *United States v. Walker*, 665 F.3d 212, 223 (1st Cir. 2011) ("This provision has been applied almost exclusively in cases in which pervasive pretrial publicity has inflamed passions in the host community past the breaking point"), courts have considered and rejected motions to transfer pursuant to the rule based on other alleged sources of prejudice. One example involving media coverage arguably connected to a case, but in fact not connected, is *United States v. Awadallah*, 457 F. Supp. 2d 246, 252-54 (S.D.N.Y. 2006). There, the

13

Southern District of New York denied a motion to transfer venue made by a Jordanian defendant facing perjury charges arising out of his alleged contact with some of the hijackers who carried out the terrorist attacks of September 11, 2001. The defendant argued that "'New Yorkers are too close to the events of September 11, 2001' for him to receive a fair trial in the Southern District of New York," resulting in a hostile deliberative environment and actual prejudice. *Id.* at 246, 249. His argument was bolstered by the fact that his earlier trial resulted in a mistrial, after which news media reported that "jurors had told stories of the World Trade Center attack during deliberations, sometimes tearfully." *Id.* at 249 (quoting Michael Brick & Sarah Garland, *Another Prologue Begins in Epic 9/11 Court Case*, N.Y. TIMES, May 6, 2006, at B1). Nevertheless, the District Court for the Southern District of New York was unpersuaded and denied the motion, citing other cases in which courts denied motions for venue transfer "that cannot be said to hinge on the effects of pretrial publicity, but rather on the effects that a massive, disastrous event has wrought on the jury pool as a whole." *Id.* at 251.

Courts have also denied motions to transfer venue made by defendants who argued that their personal characteristics, such as race, ethnicity, and religion, made it impossible for them to obtain a fair trial. *E.g., United States v. Farries*, 328 F. Supp. 1034, 1037 (M.D. Pa. 1971) (denying motion to transfer venue where "[d]efendants are Black Muslims. They argued that their religious beliefs precluded their obtaining a fair trial in Lewisburg. Thus, it was argued that since there were no adherents of the Black Muslim faith in this area, the particular problems and

14

views of this group could not be objectively evaluated"); *United States v. Kane*, 537 F.2d 310, 311 (8th Cir. 1976) (per curiam) (affirming provisional denial of motion to transfer pending examination of the venire for actual bias where defendant argued that "residents of South Dakota were prejudiced against members of the American Indian Movement"); *United States v. Salim*, 189 F. Supp. 2d 93, 95-97 (S.D.N.Y. 2002) (denying motion to transfer venue where Arab defendant argued that September 11, 2001 attacks had "so incapacitated potential jurors drawn from the Southern District of New York that a fair trial here for [him] would be unlikely").

Other than asserting in his memorandum that Governor LePage made certain remarks, Mr. Crosby failed to provide the Court with any specifics about nor citation for when the Governor made the remarks, what he said, and what the context was. The Court has only a general memory of the Governor's remarks, which he made some time ago, and the ensuing controversy. However, absent any specific proffer, it is unclear about what exactly is before the Court on Mr. Crosby's motion. Mr. Crosby has made no effort to substantiate his claim that these remarks have any current impact, let alone the drastic one required for transfer of venue—that he "cannot possibly receive an impartial trial." *Quiles-Olivo*, 684 F.3d at 182.

Voir dire is a cardinal pillar of our jury selection process designed to select petit jurors who are open-minded and unbiased. The Court infers that Mr. Crosby refers to the case of *United States v. McBride*, 1:16-cr-00152-JAW when he speaks of "a recent jury selection in this Court involving an out-of-state African-American Defendant facing similar charges [in which] the parties were within one or two jurors

15

from not being able to select a jury" in part due to members of the venire being "prejudiced by the Governor's comments." *Def.'s Mot.* at 6. In a sense, Mr. Crosby's example weakens his argument. His characterization of voir dire in *McBride* suggests that the process actually worked and served its crucial purposes by ferreting out those members of the venire whose impartiality was in doubt. The experience in the *McBride* trial may caution the Clerk's Office to make certain there are enough prospective jurors to complete jury selection, but it does not suggest an out-of-state, African-American, male defendant charged with drug trafficking is unable to receive a fair trial in the District of Maine.

In short, the Court is unconvinced that the past race-based prejudicial comments attributed to the Governor of Maine render Mr. Crosby unable to obtain a fair trial. *See Walker*, 665 F.3d at 223 (transfer pursuant to Rule 21(a) "requires prejudice so great that the defendant cannot receive a fair trial").

2. **Convenience under Rule 21(b)**

Courts have broad discretionary power to transfer a criminal prosecution to another district "for the convenience of the parties, any victim, and the witnesses and in the interest of justice." FED. R. CRIM. P. 21(b); *Quiles-Olivo*, 684 F.3d at 181. In exercising that discretion, courts often consider a number of factors identified by the Supreme Court in *Platt v. Minnesota Mining & Manufacturing. Co.*, 376 U.S. 240, (1964). *Quiles-Olivo*, 684 F.3d at 184-85. These factors include: (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be in issue; (4) the location of documents and records likely to be involved; (5) the

disruption of defendant's business if the case is not transferred; (6) the expense to the parties; (7) the location of counsel; (8) the relative accessibility of the place of trial; (9) the docket condition of each district or division involved; and (10) any other special considerations relevant to transfer. *Platt*, 376 U.S. at 243-44.

In *United States v. Peake*, 804 F.3d 81 (1st Cir. 2015), the First Circuit affirmed the district court's denial of the defendant's motion for transfer of venue pursuant to 21(b) where the district court "reason[ed] that any inconvenience suffered by [the defendant] was outweighed by the interest of having the case heard in the jurisdiction most seriously affected by the conspiracy." *Id.* at 90. This reasoning applies here as well. The alleged conspiracy "related to the movement of heroin from Connecticut to Maine, where the heroin was ultimately distributed." *Gov't's Opp'n* at 2. The distribution of heroin to end-users in Maine powerfully affects the people of Maine more so than the people of Connecticut or any other state through which the heroin traveled on its way to the ultimate user.

Furthermore, the Court does not view any of the *Platt* factors as suggesting that the District of Maine is inconvenient. Among them, Mr. Crosby raises only the location of possible witnesses and events likely at issue. While he contends that some relevant events took place in Connecticut and some witnesses are located there and in Massachusetts, the Government points out that other relevant events and witnesses are Maine-based.[2] Even assuming that the Districts of Maine and

---

[2] Both parties made factual assertions in their application of the *Platt* factors for which they cite no record authority. The Court considers these undocumented assertions as the parties' proffers of what the trial evidence will consist of pursuant to Federal Rule of Criminal Procedure 21(b).

Connecticut would be equally convenient, this does not convince the Court that transfer pursuant to Rule 21(b) is justified.

Finally, Mr. Crosby avers that "the alleged conspiracy occurred outside of Maine" and that his "alleged participation in the conspiracy charge has no connection to Maine." *Def.'s Mot.* at 7. He is wrong. When a crime consists of distinct parts, taking place in different localities, venue is proper wherever any part of that crime can be proved to have taken place. *Razo*, 782 F.3d at 41 (citing *United States v. Scott*, 270 F.3d 30, 35 (1st Cir. 2001)). The Government writes that "events taking place in Maine are expected to include, the distribution of thousands of bags of heroin supplied by [Mr. Crosby], phone calls and text messages in furtherance of the conspiracy, meetings between and among co-conspirators to exchange heroin and currency, and the seizure of several thousand bags of heroin during a traffic stop of one of the conspirators." *Gov't's Opp'n* at 7. Sales of heroin are part of a conspiracy to distribute heroin. *United States v. Santiago*, 83 F.3d 20, 25 (1st Cir. 1996) ("The actuation of a drug distribution conspiracy culminates in the sale and delivery of the controlled substance"). Thus, heroin sales in Maine must mean that an important part of the conspiracy occurred in Maine and that Mr. Crosby's alleged participation—even assuming he has never been here—is connected to Maine.

### III. CONCLUSION

The Court DENIES Defendant's Motion to Dismiss Based on Improper Venue, or, in the Alternative, to Change Venue to Connecticut (ECF No. 49).

SO ORDERED.

18

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of July, 2018