UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA

v.                                                                                              17-CR-123-JAW

MYRON CROSBY, JR.

REVISED AMENDED MOTION AND MEMORANDUM IN SUPPORT OF
MOTION FOR COMPASSIONATE RELEASE OR MODIFICATION OF
IMPOSITION OF TERM OF IMPRISONMENT

Now Comes MYRON CROSBY, Jr. and submits the following to this Honorable Court pursuant to the Court's COVID-6 Order and 18 U.S.C. § 3582(c)(1)(A) submits the following as his Amended Motion And Memorandum In Support Of Motion For Compassionate Release Or Modification Of Imposition Of Term Of Imprisonment. In support hereof, the Defendant represents as follows:

Myron Crosby Jr., is a 57-year-old man who is medically appropriate for Compassionate Release under the Coronavirus Aid, Relief, and Economic Security Act ("CARES ACT"), PL 116-136, 134 Stat 281 (Mar. 27, 2020), see also 18 U.S.C. § 3582(c)(1)(A).

A reduction of Crosby's remaining sentence to time-served and an imposition of an extended term of Supervised Release is justified by Crosby's poor health, his age (57 years of age), COVID-19 high risk, Fort Dix infection rates, the fact Crosby is serving a sentence for a non-violent offense, and that Crosby's daughter, S******* C*****, is fully prepared to supervise and care for Crosby for the remainder of his sentence neutralizing any otherwise apparent danger to the community.

### I.     Myron Crosby Jr. is Medically Appropriate for Compassionate Release

Mr. Crosby has four significant underlying health conditions which place him at an increased risk of severe illness from COVID-19. First, Crosby has a serious heart condition; he suffered a heart attack. *Revised PSR* ¶ 80. Second, Crosby has a documented history of kidney issues. *Id.* Third, he is severely obese. Fourth, Crosby has Type-2 diabetes. *Revised PSR* ¶ 80. The CDC lists all four of these medical conditions as those that have the strongest and most consistent evidence of increasing a person's risk of experiencing severe illness from COVID-19.[1]

Crosby is 57-years old and in poor health. In 2015, Crosby had a heart attack while in Federal custody. PSR ¶ 80. Crosby has also been diagnosed with high blood pressure, cholesterol, heart and kidney issues, and diabetes. *Id.* On 04/07/2020, a BOP physician described his kidney condition as "chronic renal insufficiency." Exhibit #2, BOP Heath Service Note, 4//7/20 at page 1. Additionally, the Defendant is obese -- his Body Mass Index of 40.2 as of March 3, 2020 according to BOP's medical files. Exhibit #1, BOP Heath Service Note, 3/3/20, at page 2.

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html

According to the CDC, those with a Body Mass Index in excess of 30, chronic kidney disease and diabetes are at increased risk from COVID-19.[2] The CDC recognizes that those with high blood pressure may suffer increased risk from COVID-19 exposure.[3] The CDC has also engaged in data analysis for certain folks who succumbed to death by COVID-19. Of the in excess of 10,000 decedents studied, the following conclusions generated:

- 76.4% of decedents aged 65 or less experienced at least one recognized high--risk medical condition;
- 83.1% of decedents aged 65 or less experienced at least one recognized high--risk medical condition;
- 60.9% of decedents experienced cardiovascular disease;
- 39.5% of decedents experienced diabetes mellitus;
- 20.8% of decedents experienced chronic kidney disease;
- 19.2% of decedents experienced chronic lung disease;[4]

It seems undisputed that the Defendant, though still less than 65, has several on the high-risk conditions that make him particularly more susceptible to a severe COVID illness than are others in his age group.

---

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity
[3] *Id*.
[4] https://www.cdc.gov/mmwr/volumes/69/wr/mm6928e1.htm

## II. The Law Allows the Court to Grant Crosby Compassionate Release

Through the First Step Act, empowered *judges* to consider compassionate release sentencing reductions in appropriate cases. The Act allows BOP inmate-defendants to appeal directly to the court for compassionate release relief when: (1) extraordinary and compelling reasons warrant such a reduction, (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the reduction is supported by the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

### 1. Exhaustion

As a prerequisite to judicial relief, the Act requires that the Defendant has met the "exhaustion" requirement of the Act. *Id*. Mr. Crosby requested and the Fort Dix Warden effectively denied Compassionate Release. Under § 603(b) of the First Step Act, The Defendant has now appropriately moved the Court for a sentence reduction based on extraordinary and compelling reasons support a compassionate release. First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018) as codified at 18 U.S.C. § 3582(c)(1)(A)(i). The court may consider a motion brought directly by the defendant: (1) "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or (2) after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Crosby submitted his request for Compassionate Release to the Warden at Fort Dix, dated May 13, 2020. *See Defendant's Compassionate Release Exhibit #4*. The Warden's office sent Petitioner a response on May 18, 2020 asking Petitioner to be more specific as to which of the BOP's Program Statement 5050.50 (P.S.) criteria under which Crosby requested compassionate release. *Id.* Because P.S. never contemplated a global pandemic, nor CDC-defined high-risk factors, the P.S. does not provide for the relief Petitioner seeks. *See Defendant's Compassionate Release Exhibit #4*. By only requesting more information, the Warden expressly failed to either approve or deny the request. To date, the Director of BOP has not filed a timely motion on Petitioner's behalf for Compassionate Release. Therefore, Crosby has as of mid-June, 2020, met the 30-day requirement set forth in § 3582(c)(1)(A)

**2. Extraordinary and Compelling Reasons**

Congress did not explicitly define what constitutes "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i). The US Sentencing Commission has offered the Court various grounds upon which to assess compassionate release. USSG § 1B1.13, Application Note 1. The sole ground relied upon here by Mr. Crosby is the provision which provides that: "[T]here exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." USSG § 1B1.13, Application Note 1D.

Except for those factors explicitly mentioned, Courts decide what factors might be considered "extraordinary and compelling reasons" to grant compassionate release. *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11,

2019).  The US Sentencing Commission provided two clarifying elements to help guide the Court here.  First, extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing." USSG § 1B1.13 Application Note. 2.  Second, rehabilitation, although "not, by itself, an extraordinary and compelling reason," may be considered with other factors. *See* USSG § 1B1.13, Application Note. 3; *see also* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").  The COVID circumstances has caused courts assessing Compassionate Release claims to consider factors BOP could have considered. *See e.g. United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331(E.D. Pa. Apr. 1, 2020); *United States v. Scott*, No. 17-CR-156, 2020 WL 2508894 (E.D. Wis. May 15, 2020).

### 3. COVID-19

The global COVID-19 pandemic has aggravated already overcrowded prison and lax medical treatment in prisons. Many federal courts have concluded that 'extraordinary and compelling' circumstances exist when an incarcerated defendant suffers from health conditions that make him particularly susceptible to serious complications should he contract COVID-19.  *See e.g.*, *U.S. v. Estrella*, 2:15-cr-32-GZS, 6/16/20, p.3 ECF # 46; *U.S. v. Christian*, 2:13-cr-96-NT, 5/26/20, ECF #80.

The Department of Justice generally agrees that an inmate who suffers from the chronic conditions recognized by the CDC with high risk of severe illness from COVID-19 may be eligible for compassionate release. *See Wise v. United States*, No. CR ELH-18-

72, 2020 WL 2614816, at *7 (D. Md. May 22, 2020); *United States v. Wright*, No. CR TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (Government now agrees that inmate's diabetes condition, and perhaps other medical conditions could constitute 'extraordinary and compelling reasons'); *United States v. Atkinson*, 2020 WL 1904585, at *3 (D. Nev. Apr. 17, 2020) (presence of COVID-19 . . . necessitates more expansive interpretation of selfcare to include Covid-vulnerability coupled with inability to practice CDC recommended safeguard procedures); *U.S. v. Esparza*, 2020 WL 1696084, at * (D. Idaho Apr. 7, 2020) (same); *see also* Government's Response in Opposition to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(I), *United States v. Hird*, Case No. 2:13-cr-39-TJS, Dkt. No. 650 (E.D. Pa. May 19, 2020) (government concession that "the risk of COVID-19" to a vulnerable inmate "presents 'a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility'").

### 4. Fort Dix Facility

The Fort Dix Facility is currently experiencing active COVID-19 among the facility population. Currently the BOP reports 15 infected inmates at Fort Dix[5]. At 15 current cases, Fort Dix ranks 18th among BOP facilities with the highest number of active inmate cases. Additionally, the BOP reports that another 25 inmates and 5 staff members that have recovered from the virus.

---

[5] https://www.bop.gov/coronavirus/

The ability to control the spread of the virus is a challenge for BOP.  As of July 14, BOP reports nationally 3,112 confirmed infected inmates and 259 infected staff. Another 5,141 inmates have recovered and there have been 95 inmate deaths. The speed of virus infection particularly in low security facilities like Fort Dix can be astonishing. For example, the similar low security BOP facility at Forrest City, Arkansas low had 42 positive inmates on April 23, 2020. By June 2, 2020 it was the most infected facility in the nation with 454 infected inmates. That is a ten-fold (1,000%) increase in five weeks. A week later they were up to 511 infected inmates.

COVID-19 does not need to be rampant or prevalent in a facility to be considered a factor in granting compassionate release.[6] *See United States v. Feucht*, Case No. 11-cr-60025, Dkt. No. 53 (S.D. Fla. May 28, 2020) (granting compassionate release despite no confirmed cases at FCI Jessup because "[z]ero confirmed cases is not the same thing as zero COVID-19 cases") (citation omitted); *United States v. Atkinson*, No. 2:19-CR-55 JCM (CWH), 2020 WL 1904585, 2-4 (D. Nev. Apr. 17, 2020)(granting compassionate release to defendant Atkinson, notwithstanding that FCP Atwater where he was housed

---

[6] The disease can affect the brain, kidneys, heart, vascular and digestive system.[6] Some patients have sudden strokes, pulmonary embolisms or heart-attack symptoms. Others have kidney failure or inflammation of the gut. Infection can affect the nervous system, causing seizures, hallucinations or a loss of smell and taste. We are learning that COVID has long term health effects. Myalgic encephalomyelitis/chronic fatigue syndrome (ME/CFS) is frequently triggered by viral infections. Over a quarter of those infected by the SARS epidemic reported chronic fatigue continued for several years post illness. Loss of smell in particular leads to a higher burn and fire risk.[6] The Government has agreed "all the sequelae of COVID-19 infection are not known to science." *Estrella*, 2:15-cr-32-GZS, 6/16/20, at 3 citing Gov't Response (ECF No. 43). BOP's use of the term "recovered" is a misnomer.  Those infected face the potential of related effects for the rest of their lives.

had seen no cases of COVID-19 because the realities of prison life make it impossible for medically vulnerable inmates like Mr. Atkinson to follow CDC guidelines to protect themselves in the face of COVID-19); *United States v. Amarrah*, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (releasing medically vulnerable inmate from FCI Loretto, despite no reported COVID-19 cases at the facility, because he could not adequately protect himself in line with CDC guideline); *United States v. Ben-Yhwh*, No. CR 15-00830 LEK, 2020 WL 1874125 (D. Haw. Apr. 13, 2020); *United States v. Asaro*, No. 17-CR-127 (ARR), 2020 WL 1899221 (E.D.N.Y. April 17, 2020) ("absent more information about how much testing the BOP is conducting, it is possible that undetected cases are present in the facility"); *United States v. Burrill*, No. 17-CR-00491-RS-1, 2020 WL 1846788, at *4 (N.D. Cal., April 10, 2020) ("Prison conditions mean incarcerated individuals, as well as society as a whole, are safer the more defendants are released.").

Fort Dix was the subject of pending litigation over COVID concerns. The ACLU filed a federal class action lawsuit seeking the Immediate release of all vulnerable inmates at Fort DIX. It was alleged that the failure of testing and of the ability of the inmates to follow CDC protective guidelines enhances the risk to those suffering from extraordinary and compelling reasons including higher-risk medical conditions. Additionally, the Defendant incorporates by express reference herein his Motion for Modification of Imposed Term of imprisonment dated June 10, 2020, especially at pgs 9 – 16 here.

### 5. Crosby is Not a Danger to the Community

If released to impose a term of Supervised-Release with an enforceable home-confinement condition and a third-party custodian offer, Mr. Crosby would not pose a danger to the community. Albeit conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin is a serious offense, it is a non-violent matter for which there were no unwitting victims. Crosby's release plan reduces the risk of danger to the community. Home-confinement enforceable by GPS Monitoring would incapacitate Crosby and would remove him from the public greatly reducing any danger to the community.

Crosby's adult daughter, S\*\*\*\*\*\*\* C\*\*\*\*\*, has expressed complete willingness to care for and exercise third-party custodian obligations over Myron Crosby at her home in Manchester, CT. *See Defendant's Compassionate Release Exhibit #5*. S\*\*\*\*\*\*(\* has offered to care for Crosby for the duration of his sentence, and even beyond into his geriatric aging years. She is a clinical care manager supervisor with the Behavioral Health Networks, Inc. She can support Crosby financially, and she would ensure that Crosby receives all necessary medical care. S\*\*\*\*\*\*\* has demonstrated a present ability to provide a secure environment, where Crosby would have his own bedroom and Crosby would only share a household with his adult daughter and her two children age 10 and 13.5. This proposed living arrangement would provide a safer living environment for Crosby, in light of his numerous underlying health conditions and his increased risk of severe illness from Covid-19, while substantially reducing any danger Crosby may pose to the community.

Additionally, S******** C***** has expressed an interest in assisting with Crosby's eventual reintegration into the workforce. She stated that her employer offers free community training programs that Crosby could benefit from. The proposed living arrangement at her southern New England home would be an environment of support and care. An environment where Crosby's daughter and grandchildren could hold Crosby accountable, could significantly reduce the likelihood of recidivism, and ensure that Crosby finally achieves his goals of full rehabilitation.

Finally, rehabilitation is a factor worth of consideration. While Mr. Crosby is only partially into his lengthy sentence, he has been incarcerated since his 2017 arrest and has presented with no behavior issues while incarcerated. His age of 57 coupled with his medical conditions have contributed to his behavioral compliance.

**Conclusion**

A federal court may modify an imposed term of imprisonment where, as here, "extraordinary and compelling reasons warrant such action . . . and that a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Myron Crosby has a serious heart condition, and has already suffered a heart attack. He is 57 years old, he has kidney issues, high blood pressure, high cholesterol, type 2 diabetes, and is severely obese. All these factors place him at a much higher risk of severe illness from COVID-19.

Crosby is housed at a facility that has seen a significant virus outbreak and struggles with limiting the virus's spread. He poses little risk to the community if relief is granted. He has a release plan of living with his adult daughter, S******* C*****. Crosby has served 33 months of his 138-month sentence, approximately 20% of his sentence. He has been in custody since September, 19, 2017. BOP projects his release in 2029. We ask the court to grant the motion reducing Myron Crosby's term of imprisonment to "time served," and imposing as term of Supervise Release with a home-detention condition for the remainder of his original term of incarceration to begin immediately upon his release.

WHEREFORE, the Defendant respectfully requests that this Honorable Court GRANT this instant Revised Amended Motion to Modify the Imposed Term of Imprisonment and grant Compassionate Release from custody consistent herewith, and grant such other relief as is fair and just.

DATED: August 17, 2020                    /s/ *Jeffrey M. Silverstein*

                                          Jeffrey Silverstein
                                          Counsel for Marion Crosby

CERTIFICATE OF SERVICE

I, Jeffrey M. Silverstein, Esq., hereby certify that foregoing Amended Motion has been electronically sent to A.U.S.A.s Joel Casey & Andrew McCormack for the Office of the United States Attorney on this 17th day of August, 2020.

/s/ *Jeffrey M. Silverstein*

Jeffrey M. Silverstein, Esq.,
Counsel for the Defendant